## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

**WILLIAM C. MURRAY**                    **CIVIL ACTION NO.  6:19-cv-1143**

**VERSUS**                               **JUDGE**

**WAITR HOLDINGS, INC.**                 **MAGISTRATE JUDGE**

---

## PETITION FOR DAMAGES

Petitioner WILLIAM C. MURRAY a person of the full age of majority domiciled in Lafayette Parish, Louisiana with respect avers:

1.      Defendant WAITR HOLDINGS, INC. ("WAITR") is a Delaware corporation with a principal business establishment in Lafayette Parish.

2.      Petitioner Murray served WAITR well and faithfully as Director of Human Resources from February 6, 2017 until his employment was wrongfully terminated on December 3, 2018.

3.      Prior to his termination Mr. Murray received consistently high performance ratings. He was frequently commended for the quality of his work and recognized for his substantial contribution in repositioning WAITR from a family-run start up to a recognized candidate for investor groups and public offering of its shares.

4.      The reason given for Mr. Murray's termination was that an investor Landcadia Holdings "wanted to bring in its own team".   That statement was false.

5.      Following the business combination with Landcadia the management team was not replaced.  Rather they were promoted and given substantial raises and stock benefits, except for Mr. Murray who was replaced by a local person with lesser qualifications but greater loyalty to the accounting group.

1

6.     Murray's termination was wrongful and actionable at law because the stated reason was a pretext for retaliation against Petitioner for opposing employment practices that violated state and federal law.

## COUNT I     Fair Labor Standards Act

7.     Murray brought to executive management's attention the fact that Waitr's pay practices violated the Fair Labor Standards Act, 29 U.S.C.A 206(a), 207 (FLSA) including (a) paying effectively a sub-minimum wage to Delivery Drivers, (b) not paying overtime properly, and (c) misclassifying some Delivery Drivers as independent contractors in order to avoid paying minimum wage and overtime.

8.     Waitr paid Delivery Drivers a cash wage of $5.00 per hour, and credited tips earned by employees to satisfy the balance of Waitr's obligation to pay federal minimum wage.  At the same time Waitr required all Delivery Drivers to provide and maintain a legally operable automobile to make deliveries and to bear all out of pocket costs associated with operating the vehicle.

9.     Murray informed management that requiring Delivery Drivers to provide the tools of Waitr's trade amounted to a prohibited "kickback" under 29 C.F.R. 531.35, and resulted in FLSA minimum wage violations in any workweek when the net wage received by an employee after deducting auto expenses was less than $7.25 per hour.

10.     Delivery Drivers' regular hourly rate for FLSA purposes was $7.25, comprised of $5.00 cash plus $2.25 tip credit. The proper FLSA overtime rate was $10.87.  Defendants paid "W2" Delivery Drivers overtime at a rate of $7.50 per hour, which is 1.5 times the $5.00 cash portion of the regular hourly wage. The result was an overtime pay shortage of $3.37 per hour.

11.     Murray repeatedly protested and opposed the Payroll Supervisor's practice of reducing or deleting reported work hours for Delivery Drivers with the intention of reducing Defendants' FLSA overtime pay liability.

12.     Murray advised management that Delivery Drivers Waitr classified as independent contractors were employees within the meaning of FLSA.  Waitr exercised the same direction and control over the manner in which their work was performed, and imposed on such drivers the same standards, requirements and controls it applied to drivers classified as employees.

13.     Waitr paid Delivery Drivers misclassified as contractors a sub-minimum wage, subjected them to same auto expense "kickback" violations prohibited by 29 C.F.R. § 531.35, and failed to pay overtime pay at or above the minimum FLSA.

14.     Additionally, Murray repeatedly protested and opposed the Payroll Supervisor's practice of under reporting Driver's overtime hours.

15.     In September 2018 Murray advised Waitr's executive team of a formal driver complaint alleging violations of the federal minimum wage law and DOL anti-kickback regulations.

16.     Murray was instructed to handle individual complaint on an "ad hoc" basis, but not to correct minimum wage underpayments nor eliminate the unlawful pay practice.

17.     On September 12, 2018 Petitioner met with an official of the Louisiana Department of Labor and expressed his concern about potential misclassification of Driver employees as independent contractors, and potential minimum wage violations stemming from Waitr's requirement that Drivers provide their own transportation and bear their own automobile expenses.

3

18.     The LDOL official advised Murray he should be proactive in investigating and eliminating potential misclassification violations within Waitr and provided contact information for an official with the U.S. Department of Labor Wage and Hour Division.

19.     Murray was accompanied by another employee of Waitr's HR department, who Petitioner believes reported the meeting to Waitr Management.

20.     Murray was instructed by executive management to publish a statement for distribution to job applicants and new hires claiming Waitr reimbursed drivers for estimated auto expenses at the rate of $2.87 per hour.

21.     Murray pointed out that the communication could be considered misleading, because Wait treated all non-tip payments as wages for all purposes and not as expense reimbursement.   Shortly thereafter, a significant portion Murray's major job responsibilities (Staffing, Benefits Administration and Payroll Review) were removed from his oversight.

22.     Murray's employment was terminated December 3, 2018.

23.     Waitr violated the Fair Labor Standards Act 29 U.S.C. §215(a)(3) by discriminating and retaliating against Murray and ultimately terminating his employment because he opposed pay practices that violated the FLSA.

### COUNT II     Louisiana Wage Payment Act Violations

24.     In addition to the foregoing Murray repeatedly protested and opposed the Payroll Supervisor's practice of intentionally withholding wage payments after the end of the payroll period and upon termination of employment when employees failed to submit requested paperwork, and under reporting drivers' work hours, all in violation of La. R.S. 23: 631, 633, 634, and 635.  Murray was told repeatedly to mind his own business.

25.     Petitioner pleads in the alternative his termination was an act of retaliation for his reporting, objecting to, or refusing to participate in a violation of state law.

26.     La. R.S. 23: 967 prohibits an employer from taking any reprisal against an employee for reporting, objecting to, or refusing to participate in a violation of state law.

### COUNT III    Title VII and the Louisiana Employment Discrimination Act

27.     Murray recommended terminating a management employee (friend of the founder), a serial sexual harasser who engaged in repeated instances of egregious sexual harassment directed against numerous subordinate female employees.

28.     Murray objected to the company's refusal to respond promptly and effectively with the offender as required by law.

29.     Petitioner pleads in the alternative his termination was an act of retaliation for his reporting, objecting to, or refusing to participate in violations of Title VII, 42 U.S.C.A. 2000(e)(1) et seq., and La. R.S. 23:303 which prohibit harassment based on sex.

### COUNT IV    Abuse of Right

30.     The Defendant abused its rights as an employer and committed an offense under La. Civil Code Art. 2315 by terminating Murray's employment in a manner that violated state and federal law, as well as accepted moral rules, good faith, and elementary fairness.

31.     Petitioner's termination was a tortious abuse of right entitling him to damages because (a) the stated reason for termination was false and pretextual, (b) the termination was expressly prohibited by La. R.S. 23:967, (c) Petitioner was terminated for engaging in protected concerted activity for the benefit of coworkers, and (d) because Mr. Murray was protected from retaliation for opposing pay practices that violated state and federal wage laws and regulations.

## COUNT V     Intentional Misrepresentation

32.     La. Civil Code Articles 2315 and 2316 afford protection for persons who are damaged by intentional or negligent misrepresentations by others with whom the victim has a contractual or fiduciary relationship.

33.     Defendant's executives and managers induced Mr. Murray to accept the termination of his employment and to sign a severance agreement with a release of all claims by falsely representing that Murray's termination was part of Lancadia's plan to replace existing management with its own team.

34.     After he signed the agreement Murray learned the management team to which he belonged was not replaced by Lancadia. Rather they were promoted and given substantial raises and stock benefits, except for Murray who was replaced by a local person less qualified by virtue of education, position specific certification, industry knowledge and experience, but with personal ties to the existing accounting group.

35.     When Murray learned those facts and confronted the Company about the fraudulent inducement of his termination agreement, the Defendant through its lawyers claimed Murray was terminated for alleged lack of expertise.

36.     That allegation was also false. Mr. Murray received consistently high performance ratings.  He was frequently commended for the quality of his work and recognized for his substantial and essential contribution in repositioning WAITR from a family run start up to a recognized candidate for investor groups and public offering of its shares.  Mr. Murray's employment was terminated for the reasons set out in Counts I, II, III and IV hereinabove.

37.     Had Mr. Murray been told he was being let go for alleged lack of expertise in favor of someone he knew to be less qualified, Petitioner most certainly would have refused to sign his termination and severance agreement.

38.     Petitioner's employment relationship and professional reputation were permanently damaged by the Defendant's misrepresentations, for which he is entitled to damages under La. Civil Code Articles 2315 and 2316.

### COUNT V     Protected Concerted Activity

39.     Petitioner was terminated for engaging in concerted activity and speech for the benefit of coworkers, which is protected from interference or retaliation under §7 of the National Labor Relations Act.

### DAMAGES

40.     As a result of his treatment by the Defendant and the loss of his position Petitioner has suffered loss of past and future employment compensation and benefits.  His professional reputation has suffered permanent, irreparable damage resulting in loss of security and self-esteem, and emotional distress with symptoms of stress disorder including anger, depression, anxiety, sleep disturbance, and fatigue which have impacted his functionality and marital and/or interpersonal relationships.

41.     Petitioner is entitled to recover all damages caused by the actions of the Defendant including past and future economic losses, wages and benefits, pecuniary and non-pecuniary compensatory damages, reasonable attorney fees, and court costs.

42.     Petitioner is entitled to and prays for trial by jury.

WHEREFORE, Petitioner prays that Defendant be served with a certified copy of the Petition and duly cited to appear and answer same, and that after due proceedings there be judgment in favor of Petitioner and against the Defendants for all damages, and for all equitable or other relief which the Court may deem appropriate.

RESPECTFULLY SUBMITTED,

**BRINEY FORET CORRY, LLP**

*/s/Christophe L. Zaunbrecher*
CHRISTOPHER ZAUNBRECHER (09546)
BRINEY FORET CORRY, LLP
413 Travis Street, Suite 200
Post Office Drawer 51367
Lafayette, Louisiana 70505-1367
Telephone: (337) 456-9835
Facsimile: (337) 233-8719
E-mail:  zaunbrecher@brineyforet.com
ATTORNEY FOR PETITIONER

**PLEASE SERVE:**
WAITR HOLDINGS, INC.
Through its registered agent:
C T CORPORATION SYSTEM
3867 Plaza Tower Drive
Baton Rouge, LA 70816