UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| WILLIAM C. MURRAY | CIVIL ACTION NO. 6:19-cv-01143 |
| VERSUS | JUDGE JUNEAU |
| WAITR HOLDINGS INC. | MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

Currently pending is the motion to compel arbitration and dismiss the complaint, which was filed by the defendant, Waitr Holdings Inc. (Rec. Doc. 3). The motion was referred to the undersigned Magistrate Judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. The motion is opposed. Oral argument was held on November 14, 2019. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion should be granted in part and denied in part.

## Background

The plaintiff, William C. Murray, worked for the defendant, Waitr Holdings, Inc., as its Director of Human Resources from February 6, 2017 through December 3, 2018. In his complaint, he alleged that Waitr wrongfully terminated his employment. He claimed that he was told that his employment was being terminated because an investor wanted to bring in its own management team. He further

claimed, however, that he was actually terminated either because he opposed and complained about certain of the company's pay practices that allegedly violated the Fair Labor Standards Act and relevant Louisiana statutes or because he objected to the company's refusal to terminate a management employee whom he contends was a serial sexual harasser. The plaintiff also asserted that the termination of his employment was an abuse of rights by the defendant, and he alleged that the defendant intentionally misrepresented the reasons for his termination. Finally, the plaintiff claimed that he was terminated for engaging in speech and activity that is protected from interference or retaliation under Section 7 of the National Labor Relations Act. He seeks to recover damages that he contends were the result of his having been wrongfully terminated from his employment with Waitr.

Waitr responded to the plaintiff's complaint with the instant motion, arguing that the plaintiff entered into three enforceable arbitration agreements that require the claims asserted in the plaintiff's complaint to be resolved by means of arbitration rather than through the litigation of this lawsuit. Waitr seeks to compel arbitration and to have this lawsuit dismissed.

## **Law and Analysis**

Mr. Murray was offered employment by Waitr in a letter dated February 2, 2017. The letter reads as follows:

> In the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree that (a) any and

> all disputes between you and the Company shall be fully and finally resolved by binding arbitration, (ii) you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration, (iii) all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion [,] and (iv) the arbitration shall provide for adequate discovery.[1]

Waitr did not file into the record a copy of this letter that was signed by Mr. Murray. However, Mr. Murray accepted Waitr's offer of employment and was employed as Waitr's human resources director for almost two years.

On November 16, 2018, Waitr sent an "Agreement to Arbitrate Claims" to Mr. Murray at his Waitr e-mail address. The agreement reads as follows:

> In consideration of the at-will employment relationship between Waitr . . . and Employee [Mr. Murray] and the mutual desire of the parties to enter into this Agreement to Arbitrate Claims ("Agreement"), the parties hereby agree that any and all disputes, claims[,] or controversies between the parties, including but not limited to any dispute arising out of or relating to this Agreement, the employment relationship between the parties, or the formation or termination of the employment relationship, or which arise after the termination of the employment relationship, which are not resolved by their mutual agreement shall be resolved by final and binding arbitration by a neural arbitrator.
> ***
> The claims covered by this Agreement include, but are not limited to, claims for: wrongful termination; breach of any contract or covenant, express or implied; breach of any duty owed to Employee by Employer . . .; personal, physical[,] or emotional injury. . .; retaliation; violation of any local, state, or federal constitution, statute, law, ordinance[,] or regulation; fraud, misrepresentation. . . and any other tort claims. . . .[2]

---

[1] Rec. Doc. 3-2 at 4.

[2] Rec. Doc. 3-2 at 16.

The November 2018 agreement goes on to state that the contemplated arbitration shall be governed by the Federal Arbitration Act. It also states, in bold upper case letters, that the employee's continued employment by Waitr is deemed to be acceptance of the terms and provisions of the agreement, even if the agreement is not signed by the employee. It is undisputed that Mr. Murray received an e-mailed copy of this agreement and continued to work for Waitr until his termination on December 3, 2018.

When Mr. Murray and Waitr parted ways, Mr. Murray signed a "Severance, Release and Confidentiality Agreement," dated December 3, 2018, which reads as follows:

> The parties agree to resolve any dispute arising under this Agreement in binding arbitration. . . . The arbitration shall be governed by the Federal Arbitration Act and shall be conducted in accordance with the Federal Rules of Civil Procedure.[3]

Arbitration is favored under both Louisiana law and federal law,[4] and the burden is on the party challenging an arbitration agreement (the plaintiff, in this case) to show that it is invalid.[5] Section 2 of the Federal Arbitration Act ("FAA") states

---

[3] Rec. Doc. 4-1 at 4. Although the entire severance agreement was filed in the record under seal, the motion to compel arbitration places the arbitration provision set forth in that agreement before the court. Disclosing the wording of that provision is necessary to the resolution of the instant motion.

[4] *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174 (5th Cir. 2004).

[5] *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

that a written agreement to arbitrate related to a transaction involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[6] The parties do not dispute that the relevant contracts are governed by the FAA. Therefore, this Court finds that the FAA is applicable to the agreements at issue in this lawsuit. The FAA requires the enforcement of arbitration agreements through the issuance of an order directing the parties to engage in arbitration and staying the litigation of disputes that are referred to arbitration.[7]

The Fifth Circuit developed a two-prong inquiry for deciding whether parties should be compelled to arbitrate their disputes.[8] The first prong requires a court to determine whether the parties agreed to arbitrate.[9] Two factors are considered in making this determination: (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the dispute in question is within the scope of the arbitration agreement.[10] In determining whether there is a valid arbitration

---

[6] 9 U.S.C. § 2.

[7] 9 U.S.C. §§ 3–4; *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 389 n. 1 (5th Cir. 2006) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)).

[8] *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001).

[9] *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d at 445.

[10] *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d at 445.

agreement between the parties, courts apply state contract law.[11] In determining whether a question falls within the scope of an arbitration agreement, courts apply the federal policy favoring arbitration.[12] Once a court finds that the parties agreed to arbitrate, it must move to the second prong of the analysis and consider whether any federal statute or policy renders the claim nonarbitrable.[13]

The FAA provides for a stay of litigation pending arbitration.[14] A court may, however, dismiss an action with prejudice, rather than stay it, when all claims asserted in the complaint are subject to arbitration.[15] This is so because "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits by the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law."[16]

---

[11] *Bowles v. OneMain Financial Group, L.L.C.*, 927 F.3d 878, 882 (5th Cir. 2019) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[12] *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008); *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

[13] *Washington Mut. Finance Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)).

[14] 9 U.S.C. § 3.

[15] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (citations omitted). See also *Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 839 (5th Cir. 2018) ("Some circuits have held that district courts must stay a case when all claims are submitted to arbitration, but this circuit allows district courts to dismiss such claims outright.").

[16] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d at 1164.

The Fifth Circuit has not decided whether a motion to compel arbitration should be decided under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or under Fed. R. Civ. P. 12(b)(3) for improper venue,[17] and has analyzed motions to compel arbitration under both rules.[18] If the plaintiff has agreed to submit his claims to arbitration, however, then it will be unnecessary to determine which rule provides the appropriate analysis.

**C.    Does An Arbitration Agreement Exist?**

Waitr contends that there are three agreements requiring Mr. Murray to arbitrate his claims, while Mr. Murray contends that no valid arbitration agreement exists. Under Louisiana law, a contract is formed by the consent of the parties through offer and acceptance.[19] A valid contract under Louisiana law satisfies four elements: (1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a lawful cause for the

---

[17]    See *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010) ("Our court has not previously definitively decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule for motions to dismiss based on an arbitration or forum-selection clause.").

[18]    *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014) (holding that a motion to compel arbitration should be analyzed under Rule 12(b)(1)); *Lim Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005) (holding that a motion to compel arbitration based on a forum selection clause should be analyzed under Rule 12(b)(3)).

[19]    Louisiana Civil Code Article 1927.

contract; and (4) the contract must have a valid object.[20]  Mr. Murray contends that he did not consent to the arbitration agreements.

Mr. Murray argued that the arbitration clause contained in the February 2017 offer of employment letter and the November 2018 arbitration agreement are not valid because he did not expressly accept them.  But Louisiana law recognizes that acceptance of an arbitration agreement need not be in writing and can be evidenced by the actions of a party.[21]  It is undisputed that Mr. Murray received a copy of the offer of employment letter, accepted employment with Waitr, and continued to work for the company for approximately two years.  His actions are sufficient to constitute acceptance of the arbitration provision set forth in the offer letter.  It is equally undisputed that Mr. Murray not only received a copy of the November 2018 arbitration agreement but was instrumental in distributing the agreement to other Waitr employees.  While he complained about the method used to deliver the agreement to other employees, particularly Waitr's drivers, that has nothing to do with his own receipt and acceptance of the agreement.  Once again, he tacitly accepted the agreement by continuing to work for Waitr after the arbitration agreement was delivered to him.  Mr. Murray signed the severance agreement

---

[20]     *Granger v. Christus Health Central Louisiana*, 2012-1892 (La. 06/28/2013), 144 So.3d 736, 760 (citing Louisiana Civil Code Articles 1918, 1927, 1966, and 1971).

[21]     *Marino v. Dillard's, Inc.*, 413 F.3d 530, 532-33 (5th Cir. 2005).

containing the third arbitration provision. Therefore, he cannot argue that he did not accept that arbitration agreement. This Court finds that Mr. Murray tacitly accepted the two earlier agreements and expressly accepted the third arbitration agreement.

Mr. Murray argued that the arbitration agreements are not binding because the parties were unequal in bargaining power. The Louisiana Supreme Court has defined a contract of adhesion as "a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms."[22] In other words, a contract is adhesionary "when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, due to lack of consent or error, which vitiates consent."[23] However, the argument that an arbitration agreement is invalid simply because the parties to the agreement were unequal in bargaining power has been rejected by Louisiana courts and also by the United States Supreme Court. In *Simpson v. Pep Boys-Manny Moe & Jack, Inc.*,[24] for example, the arbitration provision was not in

---

[22] *Aguillard v. Auction Management Corp.*, 2004-2804 (La. 06/29/2005), 908 So.2d 1, 8-9 (quoting *Golz v. Children's Bureau of New Orleans, Inc.*, 326 So.2d 865, 869 (La. 1976)).

[23] *Aguillard v. Auction Management Corp.*, 908 So.2d at 10-11.

[24] *Simpson v. Pep Boys-Manny Moe & Jack, Inc.*, 2003-0358 (La. App. 4 Cir. 04/10/2003), 847 So.2d 617, 622.

small print and was set forth in a separate agreement in standard type, similar to that used in all three contracts at issue in this case. Further, the *Simpson* court noted that the plaintiff/employee had the option of not signing the agreement and finding work at another place if he did not wish to be bound to arbitration. The court also noted that the terms of the arbitration agreement were neither unduly burdensome nor extremely harsh since both parties were bound to arbitrate their claims rather than litigate them.

In this case, none of the arbitration agreements were in small print and all three required both the employer and the employee to forego litigation and arbitrate their disputes, making the arbitration obligation a mutual one. There is no evidence that Mr. Murray was under duress at any relevant time or that he was totally lacking in power. The Louisiana Supreme Court has found that unequal bargaining power is ameliorated by a party's ability to walk away from the transaction requiring the imposition of an arbitration obligation.[25] The power of an employee to quit his job rather than sign an agreement requiring that he arbitrate employment disputes is an important one. In this case, the plaintiff could have exercised that power. Thus, as the United States Supreme Court has concluded, "[m]ere inequality in bargaining power. . . is not a sufficient reason to hold that arbitration agreements are never

---

[25] *Aguillard v. Auction Management Corp.*, 908 So.2d at 22.

enforceable in the employment context."[26] This Court therefore finds that Mr. Murray did not establish that he was in such an inferior bargaining position that his consent to the terms of the arbitration agreements was vitiated. Accordingly, this Court finds that the plaintiff's inability to participate in the drafting of the arbitration agreement did not render the agreements adhesionary or result in terms or provisions that negatively impacted the plaintiff without having the same effect on the defendant. Furthermore, the arbitration clauses did not prevent an employee from effectively vindicating his or her statutory rights. An arbitration agreement is a "specialized kind of forum-selection clause."[27] By agreeing to arbitrate a particular cause of action, the parties to the agreement do not forgo any substantive rights but only agree to submit to the jurisdiction of an arbitral, rather than a judicial, forum.[28] Thus, the agreement to arbitrate does not operate as a prospective waiver of statutory rights.

Mr. Murray also argued that he did not consent to the arbitration provision contained in the severance agreement because he was fraudulently induced to sign that agreement. Even when a contract is induced by fraud, an arbitration clause contained in the contract is enforceable unless the plaintiff was fraudulently induced

---

[26] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).

[27] *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).

[28] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. at 26.

11

into agreeing to the arbitration clause itself.[29] Mr. Murray did not allege that the arbitration clause was hidden or misrepresented. Instead, he alleged that the reason why his employment was terminated was misrepresented – more specifically, he alleged that he was told that he was being let go because an investor wanted to bring in its own management team but later found out that actually was not the case. Because Mr. Murray did not allege that he was fraudulently induced into agreeing to arbitration, the arbitration clause in the severance agreement remains enforceable.

In summary, this Court finds that the plaintiff's arguments that the arbitration agreements are invalid lack merit. After careful consideration of the terms and provisions of the arbitration agreements, this Court finds that there is nothing in the relative strength of the parties' positions, the content of the agreements, or the way the documents were crafted that calls into question the validity of the plaintiff's consent to the terms of the agreements, as indicated by his signature on the document he signed upon termination and as indicated by his conduct in entering into and continuing an employment relationship with Waitr when presented with the first two arbitration agreements. Consequently, this Court finds that all three arbitration agreements are valid.

---

[29] *Downer v. Siegel*, 489 F.3d 623, 627 (5th Cir. 2007); *Bhatia v. Johnston*, 818 F.2d 418, 421 (5th Cir. 1987) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)).

### D. Do the Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement?

Having found that valid agreements to arbitrate exist between the parties, this Court must determine whether the dispute articulated in Mr. Murray's complaint lies within the scope of the arbitration agreements. When determining the scope of an arbitration clause, a court must focus on the factual allegations set forth in the complaint rather than on the legal causes of action asserted by the plaintiff.[30] In light of the federal policy favoring arbitration, courts ordinarily resolve any doubts concerning the scope of an arbitration clause in favor of arbitration.[31]

Mr. Murray argued that his claim against Waitr lies beyond the scope of the arbitration agreements. Mr. Murray's claim is that his employer wrongfully terminated his employment. This is, therefore, a relatively simple wrongful termination lawsuit. But Mr. Murray argued that his claims arise under the FLSA, the Louisiana Whistleblower Act, and Louisiana tort law and, consequently, are separate and distinct from obligations arising out of the employment relationship itself or from the severance agreement. This argument lacks merit. First, Mr. Murray does not have a wage claim under the FLSA. Whether any Waitr drivers or

---

[30] *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 344 (5th Cir. 2004).

[31] *Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.*, 921 F.3d 522, 537 (5th Cir. 2019); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24-25.

13

other employees have potential wage claims against the company is wholly unrelated to whether Mr. Murray (a) entered into a valid arbitration agreement, or (b) was wrongfully terminated. The sole claim articulated in his complaint is a wrongful termination claim. Second, if Mr. Murray did have an FLSA claim, that claim could, upon the agreement of the parties, be resolved through arbitration.[32] Mr. Murray did not present any authority for his position that his Louisiana whistleblower and tort claims cannot be arbitrated. This Court located authority for the proposition that a Louisiana whistleblower claim may be resolved through arbitration[33] and the November 2018 arbitration agreement expressly includes tort claims and claims based on the alleged violation of a state statute among the claims to be submitted to arbitration. Therefore, Mr. Murray's argument that the nature of his claims forecloses the ability to resolve those claims through arbitration lacks merit.

---

[32] See, e.g., *Edwards v. Doordash, Inc.*, 888 F.3d 738 (5th Cir. 2018); *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d at 297 (compelling arbitration of FLSA claims on the basis that "a court is required to enforce a party's commitment to arbitrate his federal statutory claims unless he can show that Congress intended to preclude arbitration or other nonjudicial resolution of those claims"); *Norred v. Cotton Patch Café, LLC*, No. 3:19-CV-1010-G, 2019 WL 5425479, at *8 (N.D. Tex. Oct. 22, 2019) (granting the defendant's motion to compel arbitration of the plaintiffs' FLSA claims and staying proceedings pending arbitration); *Duran v. Conn Appliances, Inc.*, No. A-18-CV-761-RP, 2019 WL 2336873, at *4 (W.D. Tex., May 31, 2019), report and recommendation adopted, 2019 WL 5026822 (W.D. Tex. July 12, 2019) (ordering the plaintiffs to arbitrate their FLSA claims).

[33] *McBride v. Mursimco, Inc.*, No. Civ. A. 04-0713, 2004 WL 1459565, at *3 n. 3 (E.D. La. June 28, 2004); *Jones v. Tenet Health Network, Inc.*, No. Civ. A. 96-3107, 1997 WL 180384, at *3 (E.D. La. Apr. 7, 1997).

The wording of the arbitration agreements indicate that Mr. Murray's wrongful termination claim falls within the scope of the agreements. The February 2017 employment letter states that "any dispute or claim relating to or arising out of our employment relationship. . . shall be fully and finally resolved by binding arbitration." This Court therefore finds that Mr. Murray's claim falls within the scope of this provision.

The November 2018 arbitration agreement states that "any and all disputes, claims[,] or controversies between the parties. . . shall be resolved by final and binding arbitration." This provision is even broader than that in the employment letter and clearly encompasses the claim asserted in the plaintiff's complaint. Any claim between the parties – even if it is not rooted in Mr. Murray's employment by Waitr – must be arbitrated. Therefore, this Court finds that Mr. Murray's claim falls within the scope of this provision.

The severance agreement is less broad. It states that "[t]he parties agree to resolve any dispute arising under this Agreement in binding arbitration." However, since the severance agreement governed the way in which Mr. Murray's employment with Waitr ended and Mr. Murray claims that the termination of his employment was wrongful, this Court finds that the claim asserted in the lawsuit arises under the severance agreement. Consequently, Mr. Murray's claim falls within the scope of the severance agreement's arbitration clause.

Accordingly, this Court concludes that the claim set forth in the plaintiff's complaint falls within the scope of all three arbitration agreements.

### E. Does a Statute or Policy Render the Plaintiff's Claims Nonarbitrable?

The next step in the applicable analysis requires this Court to determine whether any statute or policy renders the plaintiff's claim nonarbitrable. Mr. Murray argued that the November 2018 arbitration agreement "was designed to prevent or obstruct the assertion of valid wage claims in a pending or threatened FLSA collective action for the Driver wage violations."[34] This argument has nothing to do with Mr. Murray or his wrongful termination claim. Further, the November 2018 agreement does not take any substantive rights away from any of Waitr's employees, it merely specifies that any claims they might have must be resolved through arbitration rather than through litigation. Furthermore, as noted earlier, FLSA claims may be resolved by arbitration. Accordingly, this Court finds that the plaintiff did not establish that there is any statute or policy that renders his claims nonarbitrable.

### F. Dismissal or Stay?

Section 3 of the FAA states that a lawsuit referred to arbitration shall be stayed pending the outcome of the arbitration proceeding.[35] If all of the claims asserted in

---

[34] Rec. Doc. 10 at 10.

[35] 9 U.S.C. § 3.

the complaint are subject to arbitration, however, the suit may be dismissed.[36] Because the plaintiff in this lawsuit has alleged a variety of claims, all of which center around the allegedly wrongful termination of his employment by the defendant, a possibility exists that there may be a claim that will not be accepted by the arbitrator as falling within the scope of the arbitration agreements. Accordingly, out of an abundance of caution, this Court recommends that this action should be administratively closed pending the arbitration of Mr. Murray's claims. Should the arbitration resolve all of his claims, the parties should jointly – and promptly – move the court for dismissal of the action. Should the arbitration not resolve all of his claims, the parties should jointly – and promptly – move the court to reopen the matter so that any remaining claims may be resolved.

## Conclusion

For the foregoing reasons, this Court recommends that the motion to compel arbitration and dismiss the plaintiff's complaint (Rec. Doc. 3) should be granted in part and denied in part. More particularly,

(a) It is recommended that the motion should be granted to the extent that it seeks to compel arbitration of the plaintiff's claims.

---

[36] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d at 1164.

(b) It is recommended that the motion should denied to the extent that it seeks dismissal of the plaintiff's claims; instead, it is recommended that this matter be administratively closed pending arbitration.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[37]

Signed at Lafayette, Louisiana, this 14th day of November 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[37] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).