UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM C. MURRAY** | **CIVIL ACTION NO. 19−01143** |
| **VERSUS** | **JUDGE MICHAEL J. JUNEAU** |
| **WAITR HOLDINGS, INC.** | **MAGISTRATE JUDGE HANNA** |

### OBJECTIONS TO
### REPORT AND RECOMMENDATION

Plaintiff WILLIAM C. MURRAY objects to the Report and Recommendation of the Magistrate Judge (Rec. Doc. 21), to the extent the Report recommends that the defendant's motion to compel arbitration be granted. More specifically, Plaintiff contends the following findings and conclusions are erroneous:

**Objection No. 1**

The Report states: "In determining whether a question falls within the scope of an arbitration agreement, courts apply the federal policy favoring arbitration". (citations omitted). Doc. 21, p. 6/18

Plaintiff's Response: The statement is correct, however the section of the Report setting out applicable legal principles fails to mention that in the first prong of the analysis (whether an agreement to arbitrate exists), the presumption in favor of arbitration does not apply.

**Objection No. 2**

The Report states: "It is undisputed that Mr. Murray received a copy of the offer of employment letter, accepted employment with Waitr, and continued to work for the company for approximately two years. His actions are sufficient to constitute acceptance of the arbitration provision set forth in the offer letter."    Doc. 21, p. 8/18

Plaintiff's Response:  Louisiana law recognizes that acceptance of an arbitration agreement need not be in writing and can be evidenced by the actions of a party.[1]  However, under *Marino* continued employment does not constitute assent to an arbitration provision in an offer letter unless the document or policy provides notice of that consequence, and the employee expressly acknowledges receipt of such notice.[2]  Without notice and acknowledgment that continued employment constitutes acceptance, under Louisiana law no contract is formed.  The Offer Letter satisfied neither of those requirements.

**Objection No. 3**

The Report states: "On November 16, 2018, Waitr sent an "Agreement to Arbitrate Claims" to Mr. Murray at his Waitr e-mail address. The agreement reads as follows:

> In consideration of the at-will employment relationship between Waitr . . . and Employee [Mr. Murray] and the mutual desire of the parties to enter into this Agreement to Arbitrate Claims ("Agreement"), the parties hereby agree ……".    (remainder of text omitted)

Rec. Doc, 21 p. 3/18

Plaintiff's Response:  The insertion of Mr. Murray's name in brackets in the quoted text is probably intended as a parenthetical expression, to highlight that Murray was an Employee of Waitr, which of course goes without saying.   Plaintiff enters this objection merely to point out

---

[1] *Marino v. Dillard's, Inc.,* 413 F.3d 530, 532-33 (5th Cir. 2005).
[2] *Id.*

Mr. Murrays name does not appear in the text of the document itself. Any inference that the document, which was aimed generically at all Employees, was addressed to, named or referred to Mr. Murray specifically, or that Murray individually desired to enter into the Agreement, would be erroneous.

Objection No. 4

The Report states: "On November 16, 2018, Waitr sent an "Agreement to Arbitrate Claims" to Mr. Murray at his Waitr e-mail address." *Id.*

Plaintiff's Response: Waitr did not send the November 2018 document to Mr. Murray at his Waitr e-mail address. Waitr broadcast the document to everyone@waitr.com. There is no dispute about the fact that Murray received a copy of the November 2018 Arbitration Policy. However, the fact that Waitr did not send the document to Mr. Murray's personal email address is material. As more fully shown in Plaintiff's Opposition to the Motion, and in Objections No. 5 and No. 6 below, the method Waitr chose to communicate the November 2018 Policy goes to the existence of a contract, and the enforceability of the Policy, without regard to actual receipt.

**Objection No. 5**

The Report does not include or consider the following text from the November 2018 Arbitration Policy:

> I ACKNOWLEDGE THAT I HAVE HAD AN OPPORTUNITY TO REVIEW AND ASK QUESTIONS CONCERNING THIS AGREEMENT AS A CONDITION OF EMPLOYMENT. ….. I FURTHER UNDERSTAND THAT BY CONTINUING TO WORK FOR COMPANY, MY CONTINUED EMPLOYMENT WILL BE CONSIDERED ACCEPTANCE OF THE AGREEMENT, EVEN WITHOUT SIGNATURE.

The text is relevant, and the omission is material because under *Marino v. Dilliards*, continued employment could constitute tacit assent to the arbitration provision only if the document provided notice of that consequence and Murray acknowledged receipt of such notice.[3]

In *Marino* the Fifth Circuit found under the particular facts presented, Louisiana contract principles did not require written acceptance of an arbitration agreement in order for the agreement to be enforceable. In that case Dillard employees received copies of Dillard's Rules of Arbitration and a guidance memo, and signed an Acknowledgment Form that stated:

> "[e]mployees are deemed to have agreed to the provisions of the Rules [of Arbitration] by virtue of accepting employment with [Dillard's] and/or by continuing employment therewith."

And, immediately above the signature line:

> "I acknowledge receipt of the agreement to arbitrate certain claims and rules of arbitration."

Marino signed the Acknowledgment Form and continued working for Dillard's until terminated. The Fifth Circuit held under those facts and La. Civ. Code Art. 1927 an employee could be deemed to have accepted the Rules of Arbitration by virtue of her continued employment. 413 F.3d 530, 531–32.

The language in Waitr's November 2018 Policy gives lip service to *Marino:*

> I ACKNOWLEDGE THAT I HAVE HAD AN OPPORTUNITY TO REVIEW AND ASK QUESTIONS CONCERNING THIS AGREEMENT AS A CONDITION OF EMPLOYMENT.

> and

---

[3] Marino v. Dillard's, Inc., 413 F.3d 530, 532-33 (5th Cir. 2005)

<u>I FURTHER UNDERSTAND</u> THAT BY CONTINUING TO WORK FOR COMPANY, MY CONTINUED EMPLOYMENT WILL BE CONSIDERED ACCEPTANCE OF THE AGREEMENT, EVEN WITHOUT SIGNATURE

The language of the Policy literally requires an affected employee to acknowledge both receipt of the policy the employee's understanding of the consequences of continued employment.  The record contains no such acknowledgment by Mr. Murray, or by anyone else.  That is so because the evidence shows Waitr purposefully chose not to use the HR Portal "Paylocity", the company's usual method of communicating important documents that required affirmative acknowledgment of receipt and either understanding or consent (*i.e.* documents that the company considered "agreements").[4]

Waitr chose other methods that that did not call for or require such acknowledgment, in the hope of getting the policy in under the radar, and hopefully avoiding a mass Driver walkout.[5] · The strategy worked, however by choosing that course Waitr precluded the formation of valid agreements to arbitrate under *Marino,* and rendered the arbitration clause in the November 2018 policy unenforceable, without regard to actual receipt.

**Objection No. 6**

The Report states: "While (Murray) complained about the method used to deliver the (November 2018) agreement to other employees, particularly Waitr's drivers, that has nothing to do with his own receipt and acceptance of the agreement."  Doc. 21 p. 8/18

Plaintiff's Response:   See Objection No. 5, which also applies here. The method Waitr used to deliver the November 2018 Arbitration Policy to other employees had everything to do with Murray's own acceptance of the agreement, or lack thereof.  The policy literally called for

---

[4] Rec. Doc. 18, Exhibit filed under seal
[5] Id.  Alternate methods included mass email and chat board posting on "Discord"

employees' express acknowledgment of receipt of the policy and understanding of the consequences of continued employment. Waitr purposefully avoided the normal communication channel (Paylocity) that would require and obtain such acknowledgment (*i.e.,* compliance with *Moreno*). The method Waitr chose to deliver the Policy, including chat room "Discord" posting for Drivers and mass email to salaried and office employees like Murray precluded such acknowledgment, rendering an "agreement" to arbitrate non-existent under *Marino*.

**Objection No. 7**

The Report states: "Furthermore, the arbitration clauses did not prevent an employee from effectively vindicating his or her statutory rights. An arbitration agreement is a "specialized kind of forum-selection clause."[6] By agreeing to arbitrate a particular cause of action, the parties to the agreement do not forgo any substantive rights but only agree to submit to the jurisdiction of an arbitral, rather than a judicial, forum.[7] Thus, the agreement to arbitrate does not operate as a prospective waiver of statutory rights."  Doc. 21 p. 11/18

Plaintiff's Response:

The Report and Recommendation does not address Plaintiff's argument that the arbitration clauses in the February 2015 Offer Letter and December 2018 Severance Letter were substantively unconscionable under standards discussed by the Fifth Circuit in *Carter v. Countrywide*. The provisions do not provide expressly or by reference for arbitration procedures that meet minimum standards of procedural due process, nor require the employer to agree or adopt such standards. In *Carter* the Fifth Circuit recognized that typical commercial arbitration rules for fee and cost allocations may impose a prohibitive burden on an employment claimant, effectively preventing

---

[6] Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974).
[7] Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. at 26.

vindication of statutory rights.  The Waitr Letter arbitration clauses do not require the arbitrator to award or adjudicate attorney fees and costs to a prevailing claimant as required by the FLSA, do not provide a right of appeal or judicial review of arbitral adjudication of federal statutory employment rights sufficient to ensure that the arbitrator will comply with the requirements of the statute at issue, and do not require Waitr to adopt or adhere to such standards.  *Carter* suggests the failure to address those concerns could render an arbitration clause unenforceable [8]

### Do the Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement?

**Objection No. 8**

The Report states:

"Mr. Murray argued that his claims arise under the FLSA, the Louisiana Whistleblower Act, and Louisiana tort law and, consequently, are separate and distinct from obligations arising out of the employment relationship itself or from the severance agreement. This argument lacks merit. First, **Mr. Murray does not have a wage claim under the FLSA**. Whether any Waitr drivers or other employees have potential wage claims against the company is wholly unrelated to whether Mr. Murray (a) entered into a valid arbitration agreement, or (b) was wrongfully terminated. The sole claim articulated in his complaint is a wrongful termination claim." (emphasis added)

**Plaintiff's Response:**  The conclusion that Murray does not have a wage claim under the FLSA is incorrect as a matter of law. Plaintiff has stated a claim for retaliatory discharge and lost wages (a "wage claim") under the Fair Labor Standards Act.   An HR professional can establish retaliation under the FLSA by showing either (1) he stepped outside his ordinary role as representative of the company, or (2) he otherwise made clear to the employer that he was taking a position adverse to the employer.[9]

---

[8]*Carter v. Countrywide*, 362 F.3d 294, 298 (5th Cir. 2004); *Williams v. Cigna Financial Advisors Inc.*, 197 F.3d 752, 761 (5th Cir. 1999*), Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 90 (2000)

[9] *Hagan v. Echostar Satellite, LLC,* 529 F.3d 617, 623 (5th Cir. 2008; *Rangel v. Omni Hotel Mgmt. Corp.*, 2010 WL3927744, at *4–5 (W.D. Tex. Oct. 4, 2010)

Plaintiff satisfied the "oppositional activity" test with respect to the FLSA claims because he made it clear on numerous occasions that he opposed the payroll manager's repeated refusal to pay earned wages in the next regular paycheck (violations of FLSA §206 and 207), and he opposed the company's subterfuge of claiming a part of the employee's wage represented estimated expense reimbursement.

Murray informed management that requiring Delivery Drivers to provide the tools of Waitr's trade amounted to a prohibited "kickback" under 29 C.F.R. 531.35, and resulted in FLSA minimum wage violations in any workweek when the net wage received by an employee after deducting auto expenses was less than $7.25 per hour. Complaint, Doc. 1, ¶ 9

Murray repeatedly protested and opposed the Payroll Supervisor's practice of reducing or deleting reported work hours for Delivery Drivers with the intention of reducing Defendants' FLSA overtime pay liability. Id., ¶ 11.  He repeatedly protested and opposed the Payroll Supervisor's practice of under reporting Driver's overtime hours.  Id., ¶ 14. In September 2018 Murray met with an official of the Louisiana Department of Labor and expressed his concern about potential misclassification of Driver employees as independent contractors, and potential minimum wage violations stemming from Waitr's requirement that Drivers provide their own transportation and bear their own automobile expenses. Id., ¶ 17

When Plaintiff was instructed by executive management to publish a statement for distribution to job applicants and new hires claiming Waitr reimbursed drivers for estimated auto expenses at the rate of $2.87 per hour,  Murray pointed out that the communication could be considered misleading, because Wait treated all non-tip payments as wages for all purposes and not as expense reimbursement.  Shortly thereafter, a significant portion of Murray's major job

responsibilities were removed from his oversight. Id., ¶ 20, 22.  Murray's employment was terminated December 3, 2018.

Plaintiff contends Waitr violated the Fair Labor Standards Act 29 U.S.C. §215(a)(3) by discriminating and retaliating against Murray and ultimately terminating his employment because he opposed pay practices that violated the FLSA.  Id., ¶ 23.

Plaintiff has therefore stated a claim for retaliatory discharge and lost wages under the FLSA (a "wage claim") under *Hagan*, by alleging plausible facts that show he stepped outside his ordinary role as an HR representative of the company, and made it clear that he was taking a position adverse to Waitr executives on those issues.

**Objection No. 9**

The Report states: "If Mr. Murray did have an FLSA claim, that claim could, upon the agreement of the parties, be resolved through arbitration.[10] Mr. Murray did not present any authority for his position that his Louisiana whistleblower and tort claims cannot be arbitrated. This Court located authority for the proposition that a Louisiana whistleblower claim may be resolved through arbitration[11] and the November 2018 arbitration agreement expressly includes tort claims and claims based on the alleged violation of a state statute among the claims to be submitted to arbitration. Therefore, Mr. Murray's argument that the nature of his claims forecloses the ability to resolve those claims through arbitration lacks merit.

---

[10] See, e.g., *Edwards v. Doordash, Inc*., 888 F.3d 738 (5th Cir. 2018); *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d at 297 (compelling arbitration of FLSA claims on the basis that "a court is required to enforce a party's commitment to arbitrate his federal statutory claims unless he can show that Congress intended to preclude arbitration or other nonjudicial resolution of those claims");
.
[11] *McBride v. Mursimco, Inc.*, No. Civ. A. 04-0713, 2004 WL 1459565, at *3 n. 3 (E.D. La. June 28, 2004); *Jones v. Tenet Health Network, Inc.,* No. Civ. A. 96-3107, 1997 WL 180384, at *3 (E.D. La. Apr. 7, 1997).

Plaintiff's Response:

In *Carter v. Countrywide Credit*[12] the Fifth Circuit found nothing in the text or legislative history of the FLSA evidenced Congressional intent to preclude arbitration of claims under individually executed pre-dispute arbitration agreements. (emphasis added). The Court specifically referenced "individually executed" arbitration agreements in order to distinguish precedent that held FLSA claims are not subject to mandatory arbitration under collective-bargaining agreements.[13] "This difference is not insignificant; the Supreme Court explicitly distinguished between these two types of arbitration agreements in *Gilmer*, ultimately concluding that the former (referring to arbitration agreements embedded in collectively bargained agreements) may not be subject to arbitration while the latter (individually executed agreements) are."[14]

*Carter* holds statutory claims (including FLSA claims) will ordinarily be covered by an otherwise enforceable individually executed pre-dispute arbitration agreement, unless a different intent is indicated. Statutory claims are ordinarily not covered by collectively bargained arbitration clauses unless they are specifically included and identified in the agreement.

Under that rationale, the November 2018 Arbitration Policy does not require arbitration of statutory claims, because the Policy does not reflect, embody or contemplate individually executed pre-dispute arbitration agreements. On the contrary, Waitr purposefully rolled out the November 2018 Policy in a manner that precluded individual execution, in order to obtain a mandatory

---

[12] *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 296 (5th Cir. 2004).

[13] *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 47 L. Ed. 2d. 641, 101 S. Ct. 1437 (1981) *Bernard v. IBP, Inc. of Nebraska,* 154 F.3d 259 (5th Cir. 1998)

[14] *Carter,* 362 F.3d 294, 298.

arbitration policy that purportedly covers all members of the employee unit, including those who would individually refuse to sign such an agreement. The result more closely resembles a collectively bargained plan, which does not cover statutory FLSA and state whistleblower protection claims. See *Barrentine, Bernard, Carter*.

**Objection No. 10**

The Report States:

The February 2017 employment letter states that "any dispute or claim relating to or arising out of our employment relationship. . . shall be fully and finally resolved by binding arbitration." This Court therefore finds that Mr. Murray's claim falls within the scope of this provision.

Plaintiff's Response:

In *Jones v. Fujitsu Network Communs., Inc.*, 81 F. Supp. 2d 688, 690-693, 1999 (N.D. TX 1999) the court found the following language in a non-CBA arbitration clause sufficient to put an employee on notice that FMLA claims were subject to arbitration:

> Any dispute between an employee and Defendant arising out of the employee's employment agreement with the Company [*692] or its termination, including without limitation any claim of wrongful termination, breach of implied contract, discrimination, unlawful harassment, including sexual harassment, breach of the covenant of good faith and fair dealing, violations of public policy, or any federal or state law, or as to all of the proceeding, any related claims of defamation, or intentional infliction of emotional distress, which are not resolved by the Company and employee through direct discussion or mediation, will be submitted exclusively to final arbitration in accordance with the Company's Arbitration Procedures. (emphasis added)

The language in Murray's February 2017 Offer Letter obviously falls far short of that standard.

**Objection No. 11**

The Report states:

The November 2018 arbitration agreement states that "any and all disputes, claims[,] or controversies between the parties. . . shall be resolved by final and binding arbitration."

>This provision is even broader than that in the employment letter and clearly encompasses the claim asserted in the plaintiff's complaint. Any claim between the parties – even if it is not rooted in Mr. Murray's employment by Waitr – must be arbitrated. Therefore, this Court finds that Mr. Murray's claim falls within the scope of this provision.

Plaintiff's Response:  See Objection No. 9 and 10, which also apply here.  The November 2018 Arbitration Policy does not require arbitration of statutory claims because the Policy does not embody or contemplate individually executed pre-dispute arbitration agreements. Waitr rolled out the November 2018 Policy in a manner that precluded individual execution, in order to obtain a mandatory arbitration policy that purportedly covers all members of the employee unit, including those who would individually refuse to sign such an agreement. The result more closely resembles a collectively bargained plan, which does not cover statutory FLSA and state whistleblower protection claims. See *Barrentine, Bernard, Carter*.  Further, the November 2018 arbitration clause is insufficient to put employees on notice FMLA claims are subject to arbitration under the *Jones v. Fujitsu* standard.

**Objection No. 12**

The Report states:

The severance agreement is less broad. It states that "[t]he parties agree to resolve any dispute arising under this Agreement in binding arbitration." However, since the severance agreement governed the way in which Mr. Murray's employment with Waitr ended and Mr. Murray claims that the termination of his employment was wrongful, this Court finds that the claim asserted in the lawsuit arises under the severance agreement. Consequently, Mr. Murray's claim falls within the scope of the severance agreement's arbitration clause.

Plaintiff's Response:

\	The Severance Letter does not require arbitration of the claims presented in the Complaint, because the Letter contains a limited scope arbitration clause which must be strictly construed, and the subject claims are not within the scope of the letter.

Murray's claims described in the Complaint arise under the FLSA, the Louisiana Whistleblower Act, and Louisiana tort law. The claims do not "arise out of" or "relate to" the Agreement (Severance Letter) or out of any obligation assumed by either party in the Agreement. The claims arise out of violations of statutory obligations committed by Waitr, which are literally and figuratively separate and distinct from obligations arising out of the employment relationship itself, or obligations arising out of the termination of the relationship alone (i.e. without regard to the statutory violations), such as employment compensation, employee benefits and the like.

Determining the scope of an arbitration clause is a matter of contract.[15]   In *Papalote Creek II* the Fifth Circuit observed parties may agree upon a "broad language" arbitration clause either by incorporating the standard broad arbitration provision recommended by the American Arbitration Association, or by creating their own broad provision.[16] These standard arbitration provisions typically require arbitration of "[a]ny controversy or claim arising out of or relating to [the] contract" or "any dispute . . . with respect to the interpretation or performance [**10] ."[17]

Alternatively, the parties may agree upon narrow language in the arbitration clause by deviating from the broad standard provisions and by limiting arbitration only to a subset of disputes that may arise out of the contract.[18] See, e.g. Negrin v. Kalina, 2010 U.S. Dist. LEXIS 71068, 2010 WL 2816809, at *5 (S.D.N.Y. 2010) ("The parties' use of precise language in the arbitration clause

---

[15] *Papalote Creek II, L.L.C. v. Lower Colo. River Auth.*, 918 F.3d 450, 454-455, 2019 U.S. App. LEXIS 7905, *8-11, 2019 WL 1219501 (5th Cir. Tex. 2019), cit. *Hebbronville Lone Star Rentals, LLC v. Sunbelt Rentals Indus. Servs., LLC*, 898 F.3d 629, 632 (5th Cir. 2018); see also *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) (observing [**9]  that arbitration is "simply a matter of contract" and "a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration").
[16] 918 F.3d 450, 454-455, cit. *United Offshore Co. v. So. Deepwater Pipeline Co.*, 899 F.2d 405, 409 (5th Cir. 1990).

[17] *Id.* at 409-10 (emphasis added).

[18] *Id*., cit. *United Offshore,* 899 F.2d at 410; *Texaco, Inc. v. Am. Trading Transp. Co.*, 644 F.2d 1152, 1154 (5th Cir. 1981) (relying on "more restrictive language limiting arbitration" in declining to compel arbitration).

suggests an intent to limit arbitration to a particular subset of disputes.") Papalote Creek II, 918 F.3d 450, 454-455.

The Severance Letter drafted by Waitr deviated from the standard AAA broad form language by specifically referencing a subset of disputes. In the context of employment related disputes arbitration is limited to disputes "arising out of or relating to this Agreement, the employment relationship between the parties, or the formation or termination of the employment relationship". Under *Papalote* and the cases cited therein such precise language suggests an intent to limit arbitration to a particular subset of disputes. Because Murray's claims arise under the FLSA, the Louisiana Whistleblower Act, and Louisiana tort law, *i.e.,* violations of statutory obligations that are separate and distinct from obligations arising out of the employment relationship itself, or out of the termination of the relationship alone (without regard to the statutory violations), it would be reasonable to interpret the arbitration agreement to exclude the statutory claims presented in the Complaint

**Objection No. 12.**

The Report States

**E. Does a Statute or Policy Render the Plaintiff's Claims Nonarbitrable?**

"Mr. Murray argued that the November 2018 arbitration agreement "was designed to prevent or obstruct the assertion of valid wage claims in a pending or threatened FLSA collective action for the Driver wage violations."[19] This argument has nothing to do with Mr. Murray or his wrongful termination claim."

---

[19] Rec. Doc. 10 at 10.

Plaintiff's Response:

The argument that November 2018 Arbitration Policy is void because it was designed to prevent or obstruct the assertion of valid wage claims in a pending or threatened FLSA collective action for the Driver wage violations is intertwined with Mr. Murray's FLSA retaliatory discharge case for two reasons.

First, the fact that Waitr's purpose for enacting the November 2018 Arbitration Policy was contrary to public policy, means the arbitration provisions are unenforceable as to any person. As more fully shown in Plaintiff's Opposition, the Policy and its arbitration provisions may be voided by the Court because they were designed to prevent or obstruct the assertion of valid wage claims in a pending or threatened FLSA collective action for the Driver wage violations.[20] In *Currency Conversion* the defendant mailed letters to cardholders purporting to add an arbitration clause to the cardholder agreements after litigation had begun and did not inform the cardholders about the litigation in the notices. Held: communications that attempted to prevent potential class members from joining an existing action were improper and could be disallowed, given that the recipients had no other source of information concerning the litigation and were dependent on the defendant for their (credit) needs. *Id.* at 254. See also *Williams v. Securitas,* 2011 U.S. Dist. LEXIS 75502 (E.D.Pa.2011) (invalidating arbitration agreement imposed on defendant's employees while litigation was pending because it was likely to confuse putative class members about whether the agreement required them to opt out).

---

[20] See, *Balasanyan v. Nordstrom, Inc.,* 2012 WL 760566, at *3 (S.D. Cal. 2012), citing *In re Currency Conversion Fee Antitrust Litigation,* 361 F.Supp.2d 237 (S.D.N.Y.2005) (invalidating an arbitration agreement in part because adoption of the agreement after a case had been filed constituted an improper communication with putative class members).

Second, as shown in Objection No. 8, Waitr violated the Fair Labor Standards Act 29 U.S.C. §215(a)(3) by discriminating and retaliating against Murray and ultimately terminating his employment in December 2018 because he opposed pay practices that violated the FLSA.  Id., ¶ 23.  Murray stepped outside his ordinary role as representative of the company, went to the DOL and made it clear to the Agency and is employer that he was taking a position adverse to Waitr's executives on the FLSA pay issues.   If it should be determined that the arbitration provisions in the November 2018 Policy are void as against public policy because they were designed to prevent or obstruct the assertion of FLSA wage claims arising from the offenses Murray was opposing, and for which he was terminated, those same arbitration policies are unenforceable with respect to Murray's claims, for the same reason.

**Objection No. 13**

The Report states:

"Further, the November 2018 agreement does not take any substantive rights away from any of Waitr's employees, it merely specifies that any claims they might have must be resolved through arbitration rather than through litigation. Furthermore, as noted earlier, FLSA claims may be resolved by arbitration. Accordingly, this Court finds that the plaintiff did not establish that there is any statute or policy that renders his claims non-arbitrable.

Plaintiff's Response:   See Objection No. 7

The Report and Recommendation does not address Plaintiff's argument that the arbitration clauses in the February 2015 Offer Letter and December 2018 Severance Letter were substantively unconscionable under standards discussed by the Fifth Circuit in *Carter v. Countrywide*. The provisions do not provide expressly or by reference for arbitration procedures that meet minimum

standards of procedural due process, nor require the employer to agree or adopt such standards. In *Carter* the Fifth Circuit recognized that typical commercial arbitration rules for fee and cost allocations may impose a prohibitive burden on an employment claimant, effectively preventing vindication of statutory rights. The Waitr Letter arbitration clauses do not require the arbitrator to award or adjudicate attorney fees and costs to a prevailing claimant as required by the FLSA, do not provide a right of appeal or judicial review of arbitral adjudication of federal statutory employment rights sufficient to ensure that the arbitrator will comply with the requirements of the statute at issue, and do not require Waitr to adopt or adhere to such standards. *Carter* suggests the failure to address those concerns could render an arbitration clause unenforceable.

RESPECTFULLY SUBMITTED,
BRINEY FORET CORRY, LLP
/s/Christopher L. Zaunbrecher
CHRISTOPHER L. ZAUNBRECHER (09546)
BRINEY FORET CORRY, LLP
413 Travis Street, Suite 200
Post Office Drawer 51367
Lafayette, Louisiana 70505-1367
Telephone: (337) 456-9835
Facsimile: (337) 233-8719
E-mail: clzaunbrecher@brineyforet.com
Counsel for William C. Murray

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has this date been presented to all counsel via:

( ) Hand Delivery ( ) Prepaid U.S. Mail

|     |            |     |                 |
| --- | ---------- | --- | --------------- |
| ( ) | Facsimile  | ( ) | Certified Mail  |
| (X) | E-Mail     | ( ) | Federal Express |

Lafayette, Louisiana this 29th day of November, 2019.

/s/Christopher L. Zaunbrecher